**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

IN RE:                          )   Chapter 7
                                )
MICHENER, John F. and Hope G.,  )   Case No. 04-12100
                                )
            Debtors.            )

## <u>MEMORANDUM OPINION</u>[1]

Before the Court is the Trustee's Objection to the Debtors'
Exemptions and Motion for the Entry of an Order Compelling
Turnover of Property of the Debtors' Estate pursuant to 11 U.S.C.
§ 542 and Entry of an Order Declaring Certain Property to be
Property of the Debtors' Estate.  The Debtors oppose the relief
sought by the Trustee.  For the reasons stated below, the Court
will sustain the Objection and grant the Motion.


I.   <u>BACKGROUND</u>

On July 22, 2004 (the "Petition Date"), John F. and Hope G.
Michener (the "Debtors") filed a petition under chapter 7 of the
Bankruptcy Code.  George L. Miller (the "Trustee") was appointed
the chapter 7 trustee.

On the Petition Date, Mr. Michener held certain employee
stock options ("ESOs") that had been granted by his employer

---

[1] This Opinion constitutes the findings of fact and conclusions
of law of the Court pursuant to Federal Rule of Bankruptcy
Procedure 7052, which is made applicable to contested matters by
Federal Rule of Bankruptcy Procedure 9014.

between February 16, 1999, and August 15, 2003.[2]  The Debtors did

not report the ESOs on their Schedules and, in response to an

inquiry by the Trustee, took the position that the ESOs were not

property of the estate.[3]  According to the Debtors, the ESOs were

not exercisable as of the Petition Date, though 220 became

exercisable shortly thereafter, on August 15, 2004.

The Trustee objected to the Debtors' apparent claim of

exemption[4] and sought turnover of the ESOs.  A hearing was held

on March 17, 2006, on the Trustee's Objection and Motion.  At

that time the Trustee argued that all Courts to address this

issue have concluded that ESOs become property of the estate

whether or not they are exercisable.  The Debtors requested time

to submit a reply brief on this point, which was filed on March

28, 2006.  The Trustee filed a supplemental response on April 4,

2006.  This matter is now ripe for decision.

---

[2]  The ESOs were issued by Bank One, which subsequently merged with JPMorgan Chase ("JPM").  A September 11, 2004, summary of Mr. Michener's JPM ESO account shows that Mr. Michener had been granted a total of 5,306 ESOs pre-petition, of which 2,598 remained outstanding as of the date of the summary.  (Debtors' Supp. Br. Ex. B.)  It is not clear, however, if that is the number of outstanding ESOs Mr. Michener held on the Petition Date.

[3]  The Court notes that Schedule B requires disclosure of "all personal property of the debtor of whatever kind" whether or not it is property of the estate.

[4]  The Trustee also objected to other exemptions claimed by the Debtors (including Mr. Michener's 2004 employment bonus and tax refund).  Those objections have been resolved.

II.   <u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(B), (K) & (O).

III.  <u>DISCUSSION</u>

A.   <u>Property of the Estate</u>

The Trustee argues that the ESOs became property of the estate on the Petition Date pursuant to section 541(a)(1) of the Bankruptcy Code.  That section defines estate property to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

The Debtors assert that, while Mr. Michener owned the ESOs on the Petition Date, he did not own the right to exercise them at that time.  Therefore, they argue, there was no "legal" or "equitable" interest in the <u>exercise</u> of the ESOs that could have passed to the bankruptcy estate.  <u>See</u> <u>LDA Acquisition, LLC v. Flag Wharf, Inc. (In re Competrol Acquisition P'ship)</u>, 203 B.R. 914, 919 (Bankr. D. Del. 1996) (holding that a Debtor's unexercised option to purchase parking space licenses did not constitute a "legal" or "equitable" interest in the licenses themselves).

The Debtors' reliance on <u>Competrol</u> is misplaced.  In that case, the Court addressed the issue of whether, under Massachusetts law, the debtor's option to purchase parking space

3

licenses amounted to a property interest in the licenses such that the owner's post-petition sale of the licenses to another party violated the automatic stay. Id. at 917. The Court held that it did not. The Court did, however, conclude that the right to exercise the option was property of the estate, thereby entitling the estate to a claim for damages against the owner. Id. at 917-18. Thus, the case does not stand for the proposition that the option or the right to exercise it was not property of the estate, as the Debtors suggest.

The Court agrees with the Trustee and the weight of authority holding that ESOs become property of the estate upon commencement of the case whether or not they are exercisable at that time. See In re Carlton, 309 B.R. 67, 71-72 (Bankr. S.D. Fla. 2004); In re Dibiase, 270 B.R. 673, 681 (Bankr. W.D. Tex. 2001); In re Lawton, 261 B.R. 774, 777 (Bankr. M.D. Fla. 2001); In re DeNadai, 259 B.R. 801, 805 (Bankr. D. Mass. 2001), aff'd sub nom. DeNadai v. Preferred Capital Mkts., 272 B.R. 21, 28-29 (D. Mass. 2001); Stoebner v. Wick (In re Wick), 249 B.R. 900, 909 (Bankr. D. Minn. 2000), aff'd, 276 F.3d 412 (8th Cir. 2002); Allen v. Levey (In re Allen), 226 B.R. 857, 862 (Bankr. N.D. Ill. 1998). It is well-settled that section 541(a)(1) encompasses "all legally recognizable interests," even those that are "contingent and not subject to possession until some future time." In re Ryerson, 739 F.2d 1423, 1425 (9th Cir. 1984).

B.    <u>Post-Petition "Earnings" Exclusion</u>

The Debtors argue that, even if the ESOs are property of the estate, the right to exercise them constitutes "earnings from services performed by an individual debtor after commencement of the case," which are excluded from estate property by operation of section 541(a)(6).

The Debtors do not cite (and the Court was unable to find) any authority applying section 541(a)(6) to exempt fully from property of the estate ESOs that were granted pre-petition but became exercisable post-petition.  Several Courts, however, have applied section 541(a)(6) and principles of <u>quantum meruit</u> to exclude from the bankruptcy estate a <u>pro rata</u> share of the realizable value of ESOs that became exercisable post-petition. <u>See</u> <u>DeNadai</u>, 259 B.R. at 806-07; <u>Lawton</u>, 261 B.R. at 780-81; <u>Wick</u>, 249 B.R. at 909-10; <u>Allen</u>, 226 B.R. at 867-68.  This is what the Debtors appear to be arguing, though they do not cite these cases.[5]

---

[5]  <u>Allen</u> and <u>Lawton</u> were discussed at length in <u>Dibiasi</u> and <u>Carlton</u>, cases relied upon by the Trustee and distinguished by the Debtors in their supplemental brief.  With minimal effort, the Court found <u>DeNadai</u>, <u>Wick</u>, and a recent law review article that is directly on point.  <u>See</u> Ryan J. Foreman, Comment, <u>Employee Stock Options in Personal Bankruptcy: Assets or Earnings?</u>, 72 U. Chi. L. Rev. 1367 (2005).

1.    "Quantum Meruit" Approach

The analysis first set forth in <u>Allen</u>, and developed further in later cases, may be summarized as follows.  ESOs that are not yet exercisable are contingent, unmatured contract rights to receive shares of the employer's stock upon tender of the option price at a future date and subject to certain conditions.  These contract rights become property of the estate upon commencement of the bankruptcy case.  <u>See</u> 11 U.S.C. § 541(a)(1).  Any profit realized upon exercise of the ESOs post-petition becomes property of the estate as "proceeds . . . or profits" of property of the estate (i.e., the contract rights).  11 U.S.C. § 541(a)(6).  It does <u>not</u> become property of the estate, however, to the extent it constitutes "earnings from services performed by an individual debtor after commencement of the case."  <u>Id.</u>

If ESOs (1) would not have become exercisable but for the employee's continuous provision of services for the employer and (2) would have been forfeited by the employee upon termination of his employment, then the employee's provision of services was a condition precedent to exercise of the ESOs.  When an employee's provision of services for his employer satisfies a condition precedent to an obligation running to him from his employer (e.g., to issue a paycheck or to sell stock at the option price), the fruits of such obligation (e.g., the paycheck or the stock) are "earnings" of the employee within the meaning of section

541(a)(6).

Only earnings from post-petition services, however, are excluded from the bankruptcy estate.  11 U.S.C. § 541(a)(6). Where ESOs are granted pre-petition, their exercise may be earned by pre-petition and post-petition efforts of the Debtor. Accordingly, the realizable value of ESOs that become exercisable post-petition (i.e., the spread between the option price and market price of the stock) must be divided between the estate and the Debtor on a <u>quantum meruit</u> basis:

> Whatever percentage of the time required for exercise of each group of options had passed before [the Debtor] filed his petition in bankruptcy, that percentage of option value is allocated to the bankruptcy estate. Whatever percentage of the time required for exercise of the options passed after the date of [the Debtor's] petition in bankruptcy, that percentage of the option value belongs to [the Debtor].

<u>Allen</u>, 226 B.R. at 867.

In the instant case, for example, the 220 ESOs that became exercisable on August 15, 2004, had been granted 366 days earlier, on August 15, 2003.[6]  Mr. Michener's provision of services for his employer between the grant date and the petition date thus satisfied 93.44% (342/366) of the condition precedent to exercise.  His provision of services between the petition date and the date the ESOs became exercisable satisfied the remaining 6.56% (24/366) of the condition.  The option price for these 220

---

[6]  2004 was a leap year.

ESOs is $29.9621.  Accordingly, the option value is ([JPM market price per share] - $29.9621) x 220 shares.  93.44% of that value belongs to the estate and 6.56% belongs to the Debtors under the quantum meruit analysis.

   2.   "Pure Asset" Approach

   The Allen approach was soundly rejected in Dibiase, a case relied upon by the Trustee.  270 B.R. at 688 ("[T]he Allen formula is simply wrong, and should not be followed by this or any other court.").  The Dibiase Court held that the entire value of an ESO inures to the benefit of the estate and that no portion whatsoever "ought to be 'allocated' to post-petition efforts of the Debtor."  Id.  It accused the Allen Court of "succumb[ing] to the understandable, but dangerous impulse to do what it thought was equity in derogation of the plain import of the statute." Id. at 687.  According to the Dibiase Court, however, the "ineluctably straightforward conclusion" from the "plain language of the statute and case law" was that the Debtor "los[es] the value of the stock options even though he continue[s] to work" post-petition.  Id.

   The only other reported decision considering these conflicting authorities agreed with Dibiase.  Carlton, 309 B.R. at 73-75.  But see Stoebner v. Wick (In re Wick), 276 F.3d 412, 416-17 (8th Cir. 2002) (endorsing Allen without discussing Dibiase).

8

a.   "Proceeds" of Property of the Estate

According to Dibiase, the Allen Court erred first by

"confusing the future value of a given stock option with the

estate's present interest in the option."  Dibiase, 270 B.R. at

683 (emphasis in original).

> The mere fact that some of an asset's eventual value
> might be affected by post-petition events, however,
> should not of necessity affect the independent
> determination of whether the estate owns all or only a
> portion of an asset.
>         . . . [I]n the [Allen] court's view, the debtor's
> post-petition actions add or create value post-
> petition, such that the debtor "earns" or "creates" not
> just the value of the option but a portion of an
> interest in the option (called by the Allen court
> "realizable value") by continuing to be employed.
> Indeed, this notion of "earning" is reinforced when the
> Allen court suggests that some portion of the Option
> may actually represent some species of post-petition
> earnings.
>         . . . To make the logic work, the [Allen] court
> suggests that the debtor "earns" the right to exercise
> the option, and that this "exercise" is some species of
> property independent of but somehow growing out of the
> underlying option--a kind of "proceeds of property"
> attributable to the Debtor's individual post-petition
> services (i.e., his continued employment). . . .  For
> that conclusion to stand, the option must be both the
> property of the estate and the proceeds of itself
> (because the earnings exception in 541(a)(6) applies
> only to proceeds of property of the estate).  The logic
> does not work.  The option cannot be both the property
> that comes into the estate on the date of filing and
> the proceeds of itself.

Id. at 683-84 (citations omitted, emphasis in original).

This Court disagrees with the Dibiase Court on this point.

Allen need not be read to stand for the absurd proposition that

an ESO is "proceeds of itself."  The opinion makes clear that

9

"upon exercise the present value of the options . . . must be
divided" between the Trustee and the Debtor.  Allen, 226 B.R. at
867 (emphasis added).  Profit realized upon exercise of an ESO
and sale of the acquired stock is quite obviously "proceeds" of
the ESO.  See In re Taronji, 174 B.R. 964, 969 (Bankr. N.D. Ill.
1994) (noting that the scope of "proceeds" in section 541(a)(6)
is "quite broad, not limited to the definition . . . set forth in
the Uniform Commercial Code, but encompassing any conversion in
the form of property of the estate, and anything of value
generated by property of the estate").  Dividing such profit
between the Debtor and the Trustee thus fits squarely within the
language of section 541(a)(6).

    It is true that, by ordering the Debtor to turn over to the
Trustee a percentage "of his rights" in the unexercised ESOs, the
Allen Court seemed to conclude that only a portion of the ESOs
became property of the estate.  See 226 B.R. at 868.  See also
Lawton, 261 B.R. at 781 (concluding that the ESOs were assets of
the bankruptcy estate "in part"); Wick, 249 B.R. at 910
(concluding that only "a 1/3 interest" in a non-exercisable ESO
"became property of the estate" upon filing).  This appeared to
contradict the Allen Court's earlier holding that the Debtor's
rights in the ESOs, "whether then vested or contingent, became
property of the estate under § 541(a)(1) on the petition . . .
date."  Allen, 226 B.R. at 866.  See also Wick, 249 B.R. at 909

10

(holding that "the [ESO] became property of the estate upon the filing of [the] petition").  The DeNadai Court, however, applied Allen in a manner that avoided any such contradiction, requiring turnover of all ESOs to the Trustee, who would liquidate them in due course and pay the Debtor his pro rata share of any profit realized.  DeNadai, 259 B.R. at 808-09.[7]

This Court agrees with the analysis of the DeNadai Court that ESOs "are first and foremost property of the estate" and that the Trustee, not the Debtor, should decide whether and when to exercise them.  See 259 B.R. at 807.  The Court notes, however, that whether the estate owns all the ESOs and must turn over a percentage of profits, or instead owns a percentage of ESOs and may keep all the profits, is a distinction without economic difference.

b.    "Earnings" of the Debtor

The Dibiase Court also criticized the Allen Court's conclusion that part of the profits from exercise of the ESOs constituted post-petition "earnings" of the Debtor.  According to the Dibiase Court, this "essential error" in reasoning stemmed

---

[7]  Discussion of DeNadai on this point was conspicuously absent from the Dibiase opinion.  See Dibiase, 270 B.R. at 689 (referring to Allen and Lawton as "the only cases directly on point" on the proration issue, though DeNadai had been cited earlier for the proposition that non-exercisable ESOs become property of the estate).  See also Carlton, 309 B.R. at 73 (purporting to address the split of authority "on the allocation of value of stock options accruing post-petition" but citing only Allen, Lawton, and Dibiase).

from "confusion over the difference between conditions precedent and conditions subsequent." <u>Dibiase</u>, 270 B.R. at 685.

> The <u>Allen</u> court evidently thought that the exercise
> provisions in the stock option agreement operated as a
> kind of vesting mechanism, so that the debtor "earned"
> options by staying employed--a kind of condition
> precedent.  In fact, however, the agreement in <u>Allen</u> . .
> . provided that the option . . . may be <u>forfeited</u> if the
> employee <u>ceases</u> to be employed--a condition subsequent.
> . . .  The grant is immediate, but it is subject to
> revocation.  [ESOs] may be subject to revocation or
> reduction in the future, but they are not earned simply
> because the employee stays employed . . . .

<u>Id.</u> (emphasis in original).

This Court disagrees with the <u>Dibiase</u> Court on this point as well.  Nothing in section 541(a)(6) compels reference to outmoded distinctions between conditions precedent and subsequent to determine whether proceeds of estate property constitute "earnings from services performed" by the Debtor post-petition. Indeed, there is a "general consensus that the distinction between conditions precedent and subsequent has little substantive meaning." <u>Simeone v. First Bank Nat'l Ass'n</u>, 971 F.2d 103, 106 n. 3 (8th Cir. 1992) (noting that the Restatement (Second) of Contracts "has abandoned entirely the use of the two terms").  This is so because <u>any</u> contractual condition "may be stated either in the <u>form</u> of a condition subsequent or condition precedent."  1-7 John Edward Murray, Jr., Murray on Contracts § 101[B][1] (4th ed. 2001) (emphasis in original).

12

To illustrate, suppose an employer promises on Monday to issue two paychecks on Friday: one to Employee A "<u>if</u> he performs services during the week" (a condition precedent) and the other to Employee B "<u>unless</u> he fails to perform services during the week" (a condition subsequent).  Both employees work all week and both receive their paychecks on Friday.  There is no <u>substantive</u> difference between the paychecks; both would be considered "earnings from services performed" during the week.  It strains common usage to suggest that Employee A "earned" his paycheck throughout the week but Employee B "earned" his paycheck fully on Monday.  Yet this is precisely the result reached by the <u>Dibiase</u> Court, which concluded that an ESO "has its full value on the day it is granted" even though it may never become exercisable (e.g., if the employee quits or is terminated).  <u>Dibiase</u>, 270 B.R. at 687.  <u>See also</u> <u>Carlton</u>, 309 B.R. at 75.

This conclusion simply does not square with economic reality.  A non-exercisable ESO has no "value" apart from the possibility that it may become exercisable, thereby obligating the employer to issue stock at the option price.  If this depends upon the Debtor's continuous employment, then the increase in value when the ESO becomes exercisable results – literally – "from services performed" by the Debtor.  It does not matter whether the performance of such services satisfies a condition precedent, or merely prevents the occurrence of a condition

13

subsequent, to the employer's obligation to issue stock at the option price. Either way, the realizable value of the ESOs is directly attributable to the Debtor's efforts. See Litzler v. Sholdra (In re Sholdra), 270 B.R. 64, 72 (Bankr. N.D. Tex. 2001) ("The test of whether earnings are excluded from the estate pursuant to Section 541(a)(6) is whether they are produced by the debtor's personal services or by something else.").

For these reasons, the Court declines to follow Dibiase and Carlton. The term "earnings" is certainly broad enough to include the profit realized from the exercise of an ESO. See Sholdra, 270 B.R. at 69 ("Congress clearly intended by the term 'earnings' something broader than salary or wages. . . . Earnings refers to all income generated by an individual."); Taronji, 174 B.R. at 971-72 (holding that post-petition lapse of restrictions on stock granted pre-petition was a form of supplemental compensation and that the unrestricted stock was, in part, post-petition "earnings" of the Debtor). Where this profit could not have been realized but for the Debtor's post-petition employment, the Court concludes that proration according to the Allen formula is perfectly consistent with the language of section 541(a)(6).

Proration also strikes a sensible balance between "the dual purposes of the [Bankruptcy] Code: first, to maximize the creditors' recovery and second, to provide the debtor with a

14

fresh start." <u>Allen</u>, 226 B.R. at 866 (citing <u>Segal v. Rochelle</u>,
382 U.S. 375, 379 (1966)).  Allowing Mr. Michener to share in any
ESO value created by his post-petition employment aligns his
interests with those of his creditors.  Were he unable to share
in this value, he may be more inclined to change jobs, thus
destroying the value of any unexercised ESOs to the detriment of
his creditors.  <u>See</u> Foreman, <u>supra</u>, 72 U. Chi. L. Rev. at 1406
(concluding that the <u>Dibiase</u> approach "may, in many cases,
actually reduce the average or expected size of the bankruptcy
estate" by "encouraging strategic job-change behavior on the part
of the Debtor").

IV.  <u>CONCLUSION</u>

    For the reasons stated above the Court will sustain, in
part, the Trustee's Objection to the Debtors' exemption and grant
the Trustee's Motion for turnover of the ESOs.  The Debtors shall
turn over the ESOs to the Trustee, who shall, upon exercise of
the ESOs, turn over to the Debtors their <u>pro rata</u> share of the
value realized pursuant to the <u>Allen</u> formula.  The Debtors shall
also provide the Trustee with a full accounting of all ESOs held
by Mr. Michener on the Petition Date, which shall include the
terms and conditions of the grant, the grant date, the exercise
price, and the date each ESO became (or is anticipated to become)
exercisable.  To the extent Mr. Michener has exercised any ESOs

15

that were property of the bankruptcy estate,[8] the Debtors shall
turn over to the Trustee the estate's <u>pro rata</u> share of the value
of these ESOs under the <u>Allen</u> formula, calculated using the
higher of the current market value of JPM stock or its market
value at the time of exercise.

An appropriate order is attached.


                              BY THE COURT:


Dated: May 26, 2006           Mary F. Walrath

                              Mary F. Walrath
                              United States Bankruptcy Judge

_____

[8]  The Debtors' Supplemental Brief cryptically states: "By
September 11, 2004 [i.e., 51 days after the Petition Date] Mr.
Michener had previously exercised 2488" ESOs.